UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| STATE OF TENNESSEE, ex rel. PAUL G. SUMMERS, in his official capacity as the Attorney General and Reporter of Tennessee, and BETSY L. CHILD, in her official capacity as the Commissioner of the Tennessee Department of Environment and Conservation,<br><br>    *Plaintiffs*,<br>v.<br><br>ESTATE OF PAULINE S. RICH, J. Stephen Rich, Executor<br><br>    *Defendant*. | No. 1:04-cv-275<br>*Edgar* |

## MEMORANDUM

The Plaintiffs bring this action against the Defendant pursuant to § 107 of the COMPREHENSIVE ENVIRONMENTAL RESPONSE, COMPENSATION AND LIABILITY ACT of 1980, as amended, ("CERCLA"), 42 U.S.C. § 9607. The Plaintiffs seek recovery of costs incurred in responding to a release, or threatened release, of a hazardous substance on the Defendant's property [Doc. No. 1 at ¶ 35]. The Plaintiffs also seek a declaratory judgment that the Defendant is liable for such costs incurred in the future, pursuant to § 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2) [*Id.* at ¶ 37]. In answering the complaint, the Defendant asserts twenty affirmative defenses [Doc. No. 5]. The Plaintiffs move to strike certain of these defenses [Doc. No. 7]. The Defendant responded [Doc. No. 10] and the Plaintiffs filed a reply [Doc. No. 11].

I.  **Background**

The following pertinent facts are based on the allegations in the complaint and the exhibits accompanying the parties' memoranda. Pauline S. Rich ("the decedent") owned two adjacent tracts of land in Hamilton County until her death in 2003. The decedent was a corporate officer of Electro-Lite Battery Manufacturing Company which manufactured batteries on the decedent's land until it dissolved in 1995. Beginning in 1977, the site was inspected and cited for various environmental violations by the Tennessee Department of Environment and Conservation ("TDEC"). TDEC's Division of Superfund completed a site investigation in 2000, revealing various contaminants on the site. TDEC's Division of Superfund contacted the United States Environmental Protection Agency ("EPA") seeking a federal investigation pursuant to CERCLA. The EPA concluded that the site did not warrant a federal cleanup under CERCLA, suggesting that the state use its authority to further investigate and cleanup the site. Exercising that authority, the Division of Superfund incurred response costs and expects to incur additional response costs in the future. In an effort to recover those costs, the Plaintiffs filed this action.

II. **Motion to Strike Standard**

FED. R. CIV. P. 12(f) provides, in pertinent part, that "upon motion by a party . . . the court may order stricken from the pleading any insufficient defense." An affirmative defense is insufficient if, as a matter of law, it cannot succeed under any circumstances. *Brown & Williamson Tobacco v. United States*, 201 F.2d 819, 822 (6th Cir. 1953); *McKinnie v. Lundell Mfg. Co., Inc.*, 825 F.Supp. 834, 835 (W.D. Tenn. 1993). Although generally disfavored, *see Brown & Williamson*, 201 F.2d at 822, motions to strike are more often granted in CERCLA actions because CERCLA specifically limits the available defenses. *See California Dep't of*

-2-

*Toxic Substances Control v. Alco Pac., Inc.*, 217 F.Supp.2d 1028, 1033 (C.D. Cal. 2002) (collecting authorities); *accord AT&T Global Info. Solutions Co. v. Union Tank Car Co.*, No. C2-94-876, 1997 WL 382101, at *1-*2 (S.D. Ohio Mar. 31, 1997); *Kelley v. Thomas Solvent Co.*, 714 F.Supp. 1439, 1442 (W.D. Mich. 1989).

### III. Analysis

The Plaintiffs move to strike various affirmative defenses raised by the Defendant. Specifically, the Plaintiffs seek to strike the equitable defenses of estoppel, waiver, unclean hands, and recoupment [Doc. No. 5 at ¶¶ 40, 41, 45, 53] as outside the scope of the defenses permitted by § 107 of CERCLA, 42 U.S.C. § 9607. The Plaintiffs also seek to strike the defense provided in § 107(o), 42 U.S.C. § 9607(o), [*Id.* at ¶ 50] as barred by the terms of that provision. The Plaintiffs also seek to strike multiple defenses applicable to Tennessee's HAZARDOUS WASTE MANAGEMENT ACT of 1983 ("HWMA"), Tenn. Code Ann. §§ 68-212-201 to 68-212-226, [*Id.* at ¶¶ 54, 55, 56, 57, 58] as inapplicable to the instant CERCLA claim. Finally the Plaintiffs seek to strike portions of the Defendant's ninth defense, which contends that the response costs are not recoverable under CERCLA or HWMA. [*Id.* at 47].

#### A. Equitable Defenses

First, the Plaintiffs move to strike the equitable defenses of estoppel, waiver, unclean hands, and recoupment (Defenses Two, Three, Seven, and Fifteen) as outside the scope of the defenses permitted by § 107 of CERCLA, 42 U.S.C. § 9607. Section 107, which imposes liability for response costs incurred in a cleanup of a hazardous waste site, begins as follows: "Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section." 42 U.S.C. § 9607(a). In turn, subsection (b) provides:

-3-

> There shall be no liability under subsection (a) of this section for a
> person otherwise liable who can establish by a preponderance of
> the evidence that the release or threat of release of a hazardous
> substance and the damages resulting therefrom were caused solely
> by
> > (1) an act of God;
> > (2) an act of war;
> > (3) an act or omission of a third party other than an employee or agent of the defendant . . .; or
> > (4) any combination of the foregoing paragraphs.

*Id.* § 9607(b). Based on this statutory directive, the Sixth Circuit specifically prohibited equitable defenses against claims based on § 107 of CERCLA. *Velsicol Chem. Corp. v. Enenco, Inc.*, 9 F.3d 524, 530 (6th Cir. 1993).

Recognizing this case law, the Defendant does not object to striking the equitable defenses. Instead, the Defendant only asks the Court to grant the Defendant leave to amend its answer, pursuant to FED. R. CIV. P. 15, to assert a counterclaim for recoupment. [Doc. No. 10 at p. 4, 9-10]. In this regard, both the Plaintiffs and the Defendant note that in CERCLA actions, recoupment claims are generally asserted as counterclaims. *See United States v. Smuggler-Durant Mining Corp.*, 823 F.Supp. 873, 878 (D. Colo. 1993). Accordingly, the Court will **GRANT** the Plaintiffs' motion to strike each of the equitable defenses—estoppel, waiver, unclean hands, and recoupment—and also **GRANT** the Defendant leave to amend its answer to assert a counterclaim for recoupment.

### B. Defense of 42 U.S.C. § 9607(o)

Next, the Plaintiffs move to strike the Defendant's affirmative defense of 42 U.S.C. § 9607(o) (Defense Twelve). Section 9607(o) excuses de minimis polluters from liability if "the total amount of the material containing hazardous substances . . . was less than 110 gallons of liquid materials or less than 200 pounds of solid materials." This defense, however, is only

-4-

available "if liability is based solely on paragraph (3) or (4) of subsection (a)." 42 U.S.C. § 9607(o). Those subsections impose liability on:

> (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and
>
> (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance . . .

42 U.S.C. § 9607 (a).

The Plaintiffs contend that the de minimis defense provided in § 9607(o) is insufficient as a matter of law because the instant claims are not based solely on paragraph (3) or (4). Rather, they contend, the instant claims are based on paragraphs (1) and (2) which impose liability on "(1) the owner and operator of a vessel or a facility, [and] (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of." 42 U.S.C. § 9607(a).

The Court notes that the Plaintiffs' complaint particularly references § 9607(a)(1) and (2). [Doc. No. 1 at ¶ 17]. Similarly, the alleged facts in the complaint are directed toward paragraphs (1) and (2), repeating that the decedent owned the land at issue. [*Id.* at ¶¶ 4, 7, 32]. Nonetheless, the Plaintiffs' first cause of action seeks to hold the Defendant "liable pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a)." [Doc. No. 1 at ¶ 35]. In other words, the Plaintiffs' claim is not strictly limited to paragraphs (1) and (2). Consequently, the Defendant could potentially be liable under paragraphs (3) or (4), in which case the de minimis defense

would be applicable. 42 U.S.C. § 9607(o). Because the de minimis defense could apply, the Plaintiffs' motion to strike this defense will be **DENIED**.

### C. Defenses to HWMA

Next, the Plaintiffs move to strike all defenses arising under HWMA (Defenses Sixteen, Seventeen, Eighteen, Nineteen, and Twenty). The Plaintiffs contend that such defenses are only applicable in a claim based on HWMA, not in a claim based on CERCLA. To this, the Defendant contends that "the issue is whether the Plaintiffs are entitled to recover under CERCLA . . . those costs that the Plaintiffs incurred pursuant to the authority granted to the Plaintiffs under [HWMA], as opposed to the authority granted to the Plaintiffs under CERCLA Section 104(d), 42 U.S.C. § 9604(d)." [Doc. No. 10 at p. 7-8].

To be clear, § 104(a) of CERCLA authorizes the federal government to undertake removal or remedial actions in the event of the release, or the substantial threat of release, of a hazardous substance into the environment. 42 U.S.C. § 9604(a). Section 104(d) authorizes state governments to undertake such action pursuant to a "contract or cooperative agreement" with the federal government. 42 U.S.C. § 9604(d). The Defendant contends that, because the Plaintiffs do not have a contract or cooperative agreement with the federal government, the Plaintiffs' actions were taken solely pursuant to HWMA. Therefore, as the Defendant's argument goes, the Plaintiffs' claims arise under HWMA, not CERCLA, and are subject to the defenses provided in HWMA.

The Defendant, however, misconstrues the structure of CERCLA and in particular the relationship between §§ 104 and 107. "CERCLA's approach to the serious problems generated by the disposal of hazardous wastes embodie[s] a bifurcated remedial scheme. This dual

-6-

approach entail[s] imposition of liability on waste generators on the one hand, *see* 42 U.S.C. § 9607, and the creation of the Superfund, on the other, *see* 42 U.S.C. §§ 9604, 9605, 9611 & 9612." *New York v. Gen. Elec. Co.*, 592 F.Supp. 291, 302 (N.D.N.Y. 1984) (internal citation omitted); *accord Walls v. Waste Res. Corp.*, 823 F.2d 977, 980-81 (6th Cir. 1987) (quoting *United States v. Reilly Tar & Chem. Corp.*, 546 F.Supp. 1100, 1112 (D.Minn. 1982)). Section 104 governs expenditures from the Superfund, and § 104(d) bars states from recovering cleanup costs from the fund unless the state enters a contract or cooperative agreement with the federal government. *United States v. Wade*, 577 F.Supp. 1326, 1335 (E.D. Pa. 1983). On the other hand, § 107 permits states to recover cleanup costs, including expenditures of state funds under state laws, directly from the waste generators. *Orange Env't, Inc. v. County of Orange*, 860 F.Supp. 1003, 1026 (S.D.N.Y. 1994) (quoting *New York v. Shore Realty Corp.*, 759 F.2d 1032, 1047 (2d Cir. 1985)); *Gen. Elec. Co.*, 592 F.Supp. at 302-03; *Wade*, 577 F.Supp. at 1336. Contrary to the Defendant's contention, claims based on § 107 are separate and distinct from § 104. *Gen. Elec. Co.*, 592 F.Supp. at 302-03; *Wade*, 577 F.Supp. at 1336.

Recognizing that §§ 104 and 107 are not interdependent, courts uniformly permit plaintiffs to maintain a § 107 claim against the waste generator despite having no contract or cooperative agreement with the federal government, as required to receive money from the Superfund under § 104(d). *Orange Env't, Inc. v. County of Orange*, 860 F.Supp. 1003, 1026-28 (S.D.N.Y. 1994); *United States v. Kramer*, 757 F.Supp. 397, 421-22 (D.N.J. 1991); *Gen. Elec.*, 592 F.Supp. at 303 (collecting authorities); *Wade*, 577 F.Supp. at 1335-36; *Ohio ex rel. Brown v. Georgeoff*, 562 F.Supp. 1300, 1315 (N.D. Ohio 1983); *Reilly Tar and Chem. Corp.*, 546 F.Supp. at 1118.

In the instant case, the Plaintiffs' claims arise under § 107 of CERCLA. As the Defendant argues, the Plaintiffs do not have a contract or cooperative agreement with the federal government. And the Plaintiffs incurred the instant cleanup costs acting pursuant to HWMA and state authority, not pursuant to CERCLA or federal authority. Nonetheless, § 107 of CERCLA permits states to recover response costs from the waste generator in exactly this scenario. Because the Plaintiffs' claims arise under § 107 of CERCLA, the claims are subject only to the defenses delineated in § 107. *See Velsicol Chem. Corp. v. Enenco, Inc.*, 9 F.3d 524, 530 (6th Cir. 1993). Section 107 does not permit defenses arising under state law. 42 U.S.C. § 9607. Accordingly, the Plaintiffs' motion to strike the defenses arising under HWMA—defenses sixteen through twenty—will be **GRANTED**.

### D. Defense that Costs not Recoverable under CERCLA or HWMA

Finally, the Plaintiffs move to strike a portion of the Defendant's ninth defense, in which the Defendant contends that the Plaintiffs' response costs "are inconsistent with the national contingency plan and/or are otherwise not recoverable under [CERCLA] or [HWMA]." The Plaintiffs argue that the latter portion, "otherwise not recoverable under [CERCLA] or [HWMA]," is insufficient as a matter of law. The Plaintiffs rightly recognize that this portion presents two defenses: whether the costs are recoverable under CERCLA; and whether the costs are recoverable under HWMA.

To the defense that the costs are not recoverable under HWMA, the Plaintiffs contend that this action arises under CERCLA, not HWMA, and, accordingly, whether the costs are recoverable under HWMA is irrelevant. The Court agrees. Above, the Court concluded that defenses under HWMA are inapplicable to the instant claims which are based on § 107 of

CERCLA. The same analysis applies here, barring any defense that the response costs are not recoverable under HWMA. The Plaintiffs' motion to strike that portion of defense nine that the costs are not recoverable under HWMA will be **GRANTED**.

To the defense that the costs are not recoverable under CERCLA, the Plaintiffs argue that recoverability of response costs under CERCLA is contingent only upon whether the costs are consistent with the national contingency plan. The initial portion of the ninth defense—that portion that the Plaintiffs do not move to strike—asserts that the Plaintiffs' response costs are inconsistent with the national contingency plan. The Plaintiffs contend, however, that the latter portion—that the response costs "are otherwise not recoverable under [CERCLA]"—exceeds the scope of the recoverability inquiry and is an insufficient defense as a matter of law. The Defendant counters by arguing that consistency with the national contingency plan is only one of several criteria for recovery of response costs, citing the following as additional requirements: that the site is a "facility"; that a "release" or "threatened release" of a "hazardous substance occur at the site; that the "release" or "threatened release" caused the Plaintiffs to incur response costs; and that the Defendant was a responsible person.

The Plaintiffs respond by arguing that these additional criteria are actually requirements for liability, not recoverability. Liability and recoverability are two distinct issues under CERCLA. *United States v. Kramer*, 757 F.Supp. 397, 436 (D.N.J. 1991). Liability is conditioned upon satisfying the four elements identified by the Defendants. *See Village of Milford v. K-H Holding Corp.*, 390 F.3d 926, 933 (6th Cir. 2004). Upon establishing liability under CERCLA, the sole requirement for recoverability is consistency with the national

contingency plan. *Kramer*, 757 F.Supp. at 436; *accord United States v. Pretty Prods., Inc.*, 780 F.Supp. 1488, 1500 (S.D. Ohio 1991).

The Plaintiffs contend that, because the ninth defense focuses on recoverability, the sole available defense is that the response costs are inconsistent with the national contingency plan. And that portion of the ninth defense that exceeds this available scope—that portion asserting as a defense that the response costs "are otherwise not recoverable under [CERCLA]"—should be stricken. The Court agrees. CERCLA differentiates liability from recoverability, conditioning recoverability only upon consistency with the NCP. The Plaintiffs' motion to strike that portion of the ninth defense which exceeds the scope of the recoverability inquiry will be **GRANTED**. In so concluding, however, the Court notes that the Defendant is nonetheless free to deny liability and argue that the Plaintiffs fail to establish any of the four prima facie elements noted above.

A separate Order will follow.

s/William B. Mitchell Carter
UNITED STATES MAGISTRATE JUDGE